UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN J. HAMZIK,

                                    Plaintiff,

        -v-                                          3:11-CV-73

OFFICE FOR PEOPLE WITH DEVELOPMENTAL
DISABILITIES; BROOME DEVELOPMENTAL
CENTER; COLEEN FADDEN, Director of
Personnel (BDC), in her official and individual
capacities; RICHARD E. LEE, JR., Assistant Director
of Personnel (BDC), in his official and individual
capacities; SONYA ROBINSON, Personnel
Administrator, Personnel Department (BDC), in her
official and individual capacities; DAVID HALL,
Assistant Worker's Compensation Administrator
(BDC), in his official and individual capacities; MARK
SALKO, Developmental Aide III (BDC), in his official
and individual capacities; JEFF KELSEY,
Developmental Aide II House Director (Glenwood
House), in his official and individual capacities; and
JAMES DRANKOWSKI, Developmental Aide I, in his
official and individual capacities,

                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

JOHN J. HAMZIK
Plaintiff, Pro Se
19 Lewis Street
Johnson City, NY  13790

HON. ERIC T. SCHNEIDERMAN              GREGORY J. RODRIGUEZ, ESQ.
Attorney General for the State of New York   Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY  12224

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiff John J. Hamzik ("plaintiff" or "Hamzik") initiated this action on January 20, 2011.  On March 17, 2011, he filed an amended complaint against defendants Office for People with Developmental Disabilities ("OPWDD"); Broome Developmental Center ("BDC")[1]; Coleen Fadden, Director of Personnel at BDC ("Fadden"); Richard E. Lee, Jr., Assistant Director of Personnel at BDC ("Lee"); Sonya Robinson, Personnel Administrator at BDC ("Robinson"); David Hall, Assistant Worker's Compensation Administrator at BDC ("Hall"); Mark Salko, Developmental Aide III at BDC ("Salko"); Jeff Kelsey, Developmental Aide II at Glenwood House ("Kelsey"); and James Drankowski, Developmental Aide I ("Drankowski") (collectively "defendants").

Plaintiff brings numerous causes of action alleging violations of federal and state law.[2] Specifically, plaintiff brings equal protection, due process, and retaliation claims pursuant to 42 U.S.C. § 1983; discrimination claims pursuant to 42 U.S.C. § 2000e ("Title VII"); claims alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C.

---

[1]  As the BDC is part of, and controlled by, the OPWDD, these entities will be consolidated and referred to collectively as OPWDD.

[2]  Although plaintiff delineates eighteen causes of action with headings, there appears to be no fewer than forty-two total claims asserted throughout the sixty-one-page amended complaint.  For example, under the heading "FIRST CAUSE OF ACTION DISCRIMINATION DUE TO SEX," plaintiff brings an equal protection claim via 42 U.S.C. § 1983, a discrimination claim pursuant to 42 U.S.C. § 2000e, and a state law claim under New York Human Rights Law § 296.  Am. Compl., 31.

§§ 12101–12300[3]; and pendent state law claims.  Plaintiff seeks declaratory, injunctive, and monetary relief.

On May 9, 2011, defendants filed a motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6) ("Rule ___").  Plaintiff responded to this motion, and defendants replied.[4]  On October 25, 2011, Hamzik filed a cross-motion seeking leave to file a second amended complaint pursuant to Rule 15(a)(2). This motion has also been fully briefed.  The motions were considered on submit.

## II.  FACTUAL BACKGROUND

The following pertinent facts, taken from the proposed second amended complaint and documents incorporated by reference therein, are accepted as true for purposes of the motion to dismiss.  BDC is operated by the state of New York, through OPWDD, and is comprised of several residential units located in Binghamton, New York.  The individually named defendants are all employees at BDC.  Plaintiff, a white male in his mid-fifties, began working as a part-time developmental aide at BDC on June 8, 2006.

In December 2009 Robinson offered Hamzik a transfer from his part-time position at Glenwood House to a full-time position in the 5A Unit with a start date of January 14, 2010. Hamzik accepted.  The following day Robinson advised plaintiff that his start date had been moved to January 28, 2010, in order to allow Anita Elbrecht ("Elbrecht"), a female part-time developmental aide with less seniority than Hamzik, to start a full-time position in the 5A Unit on January 14, 2010.  Plaintiff filed a grievance pursuant to the applicable collective

---

[3]  Plaintiff also attempts to bring claims under "Title V" of the ADA.  However, there is no Title V in the ADA.  Therefore, all of plaintiff's ADA claims are assumed to be brought pursuant to Title I.

[4]  This action was subsequently reassigned after Senior Judge McAvoy recused himself on July 14, 2011.

bargaining agreement.  With the assistance of a union representative, an agreement was reached through which Hamzik would either be transferred to the full-time position before Elbrecht or they would be transferred on the same date.

Nonetheless, Elbrecht was transferred one week ahead of Hamzik at the direction of Fadden, Lee, and Robinson.  This transfer took place while plaintiff was on vacation.  Plaintiff began working full-time in the 5A Unit on January 28, 2010.  Lee refused to adjust plaintiff's personnel file to reflect an earlier starting date and similarly denied his request for compensation for the full-time pay he missed as a result of the belated transfer.  Plaintiff subsequently filed another grievance regarding this alleged loss of seniority status.

On January 30 and 31, 2010, plaintiff suffered injuries to his back while working in the 5A Unit.  On February 2, 2010, he approached Kelsey, the House Director at Glenwood House, and asked to be reassigned to that facility.  Plaintiff desired a transfer back to Glenwood House because such an assignment was less physically demanding on his back and arthritic knee.  Kelsey advised that plaintiff's former position had already been filled by David Knebis ("Knebis"), a developmental aide who is significantly younger than plaintiff and had less seniority at BDC.  Kelsey had not posted this vacancy in accordance with the collective bargaining agreement and told plaintiff that he "can give it to whom I want!" Proposed Second Am. Compl., ¶ 57.  Plaintiff then complained to Robinson, who advised that in order to return to his former position, or any other position at BDC, he must bid on it when it is posted as available.

On February 12, 2010, plaintiff filed a grievance alleging Kelsey had "illegally gifted" his former position to Knebis.  Id. ¶ 131.  Four days later Kelsey "attempted to intimidate and harass the Plaintiff" by calling him twice and threatening to write him up for insubordination.

Id. ¶¶ 133–37.  Plaintiff immediately reported these threats to Lee as well as to a union representative and the grievance chairman, Michael Stroeman.  Plaintiff never heard from Kelsey again.  Also on February 16, 2010, plaintiff received a phone call from Drankowski, who claimed that Hamzik's grievance against Kelsey caused BDC to rescind an offer of full-time employment to his girlfriend, Tammy Mitchell ("Tammy").  Kelsey had reportedly falsified personnel documents to help Tammy obtain a full-time position and, due to plaintiff's grievance, Tammy's appointment was now being investigated along with other appointments made by Kelsey.

Also in early 2010, Lee, Hall, and Salko granted a three-month extension of "light duty" to Kristen Mitchell ("Kristen")—a female developmental aide in her twenties—after she experienced complications during her pregnancy.  Id. ¶ 102.  However, defendants refused to provide plaintiff, who was temporarily disabled at the time, with any more than sixty days of light duty.

On June 10, 2010, plaintiff transferred to the Prospect 2 House, where he agreed to work for a binding period of six months.  On that same day, defendants posted five vacant positions at the Glenwood House.  Fadden refused to permit plaintiff to bid on any of these positions as he was "locked-in" to his assignment at the Prospect 2 House.  Id. ¶ 18.  At the same time, however, Fadden allowed a younger African-American developmental aide, Matthew Darden ("Darden"), to bid on one of the open Glenwood House positions even though he was "locked into" a similar six-month assignment.  Id. ¶ 20.  Darden had also been "gifted" a full-time position in the 4E Unit by Salko without bidding on the position as is required by the collective bargaining agreement.  Id. ¶ 79.

On July 4, 2010,[5] plaintiff sustained a work-related injury to his left knee and received worker's compensation for approximately six weeks.  As a result of this injury, Hamzik again requested a transfer to Glenwood House.  Fadden denied this request and again refused to allow plaintiff out of his six-month commitment at Prospect 2 House.  Although not specifically stated in his complaint, plaintiff apparently remains employed at the BDC.

Plaintiff filed one formal charge with the Equal Employment Opportunity Commission ("EEOC") during the relevant time period.  On April 6, 2010, he filed a charge alleging gender discrimination in violation of Title VII.  See Fadden Aff., May 9, 2011, Ex. G, 17.[6]  Plaintiff specifically complained of the incident involving his and Elbrecht's transfers in January 2010 and only checked the box for "sex" discrimination.  Id.  On May 26, 2010, plaintiff sent a letter to EEOC investigator Maureen Kielt ("Kielt") asserting that arbitration would be futile and "enclosing additional claims" against defendants that had not been included in the EEOC charge.  Proposed Second Am. Compl., Ex. 1, 2.  The letter outlined only one additional claim; to wit, the alleged gender discrimination related to the preferential treatment afforded to Kristen.

On August 8, 2010, Lee sent Kielt a written response to plaintiff's EEOC charge.  This letter only addressed the claim, outlined in the EEOC charge, alleging gender discrimination and loss of seniority status related to Elbrecht's transfer.  See Proposed Second Am. Compl., Ex. 7, 36.  On September 14, 2010, Hamzik sent another letter to Kielt in which he wrote:  "I

---

[5]  In both the amended complaint and the proposed second amended complaint, plaintiff alleges that this injury occurred on July 4, 2011.  However, this must necessarily be a typographical error since the amended complaint was filed on March 17, 2011, and he discusses his six-month assignment to the Prospect 2 House, which occurred in 2010, in the same portion of the pleading.  It is therefore assumed that this injury occurred on July 4, 2010.

[6]  The pagination corresponds to the page numbers as assigned on CM/ECF.  This convention will be used for all citations to exhibits.

have noticed that my second set of claims have not been fettered into this inquiry."
Proposed Second Am. Compl., Ex. 2, 10.  Plaintiff identified his "second set of claims" as
those outlined in the May 26, 2010, letter.  Id.  He then set out a "third set of claims" related
to, inter alia, Kelsey's appointment of Knebis to his former position in Glenwood House and
Salko's appointment of Darden to a position in the 4E Unit.  Id. at 12.

On October 6, 2010, plaintiff sent Kielt another letter in which he referenced a recent
"Step-Two grievance hearing" between himself, union representatives, and agents of the
state of New York.  Proposed Second Am. Compl., Ex. 6, 34.  This letter only discussed the
claim relating to Elbrecht's transfer to the 5A Unit.  Plaintiff was issued a "Notice of the Right
to Sue Letter" on October 22, 2010, after the EEOC found no evidence on which to base a
gender discrimination claim against defendants.  Proposed Second Am. Compl., Ex. 11, 40.

## III. DISCUSSION

Where a plaintiff seeks to amend his complaint while a motion to dismiss is pending, a
court "has a variety of ways in which it may deal with the pending motion to dismiss, from
denying the motion as moot to considering the merits of the motion in light of the amended
complaint."  Roller Bearing Co. of Am., Inc. v. Am. Software, Inc., 570 F. Supp. 2d 376, 384
(D. Conn. 2008).  As Hamzik does not seek to add new defendants in the proposed second
amended complaint, and since defendants had sufficient opportunity to respond to the
proposed second amended complaint, the merits of the motion to dismiss will be considered
in light of the proposed second amended complaint.[7]  Indeed, if the proposed second

---

[7] Defendants essentially rely on the arguments made in their original motion to dismiss.  See Def.'s
Mem. in Opp'n to Pl.'s Mot., 4 ("For the sake of judicial economy, defendants refer the Court to said pending
motion [to dismiss] and submit that for all of the same reasons fully addressed and briefed therein, plaintiff's
proposed second amended complaint similarly cannot withstand a motion to dismiss pursuant to Rule

(continued...)

amended complaint cannot survive the motion to dismiss, then plaintiff's cross-motion to amend will be denied as futile.  See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).[8]

Defendants argue that:  (1) the complaint fails to comply with the pleading requirements of Rule 8; (2) certain claims for money damages against OPWDD and its employees in their official capacities are barred by the Eleventh Amendment; (3) all claims that were not included in Hamzik's EEOC charge must be dismissed; and (4) the remaining claims fail to state a claim upon which relief may be granted.

**A.  Motion to Dismiss—Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), more than mere conclusions are required.  Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009).  Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of her claims.  See Twombly, 550 U.S. at 570, 127 S. Ct. at 1974 (requiring "only

---

[7](...continued)
12(b)(6).").  It is noted, however, that contrary to defendants' assertion, Hamzik has added new causes of action; to wit, state law claims for tortious interference with contractual relations in the Third and Fourth causes of action.  Because these state law claims have no bearing on the outcome of this motion, defendants' failure to address these additional claims is irrelevant.

[8]  As the proposed second amended complaint is thus the operative document for purposes of the motion to dismiss, and in the interest of brevity, all references to "the complaint" herein shall be understood as references to the proposed second amended complaint.

enough facts to state a claim to relief that is plausible on its face").

When considering a motion to dismiss, the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  These pleading requirements apply to pro se plaintiffs as well as plaintiffs represented by counsel.  Wynder v. McMahon, 360 F.3d 73, 79 n.11 (2d Cir. 2004).  However, particular deference should be given to a pro se litigant's complaint when applying the above standard.  Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007).  Finally, a district court may consider documents attached to the complaint as exhibits or incorporated by reference therein.  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

### B.  Compliance with Rule 8

Defendants argue that the complaint must be dismissed because it fails to conform to the pleading requirements of Rule 8(a)(2) and (d)(1).  Defendants specifically note that the complaint contains numerous legal arguments, citations to case law, and responses to affidavits that had been attached to defendants' initial motion to dismiss.

As noted above, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Pro. 8(a)(2).  Although no technical form is required, "[e]ach allegation must be simple, concise, and direct."  Id. 8(d)(1).  The primary purpose of Rule 8's pleading requirements is to provide the defendants with "adequate notice."  Wynder, 360 F.3d at 79.  Adequate notice is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial."  Id. (internal quotation marks omitted).

Defendants are correct that the complaint is not a simple and concise document. Further, it contains legal arguments and conclusions that are not proper to include in a complaint. However, the factual allegations woven into the complaint, the documents incorporated by reference therein, and the attached exhibits provide defendants with adequate notice of the various claims brought against them. Plaintiff sufficiently identifies the defendants' conduct that allegedly violated the law. Therefore, the complaint accomplishes the primary purpose of Rule 8's pleading requirements.

### C. **Eleventh Amendment Immunity**

Defendants argue that all claims for money damages against OPWDD and the individual defendants in their official capacities brought pursuant to § 1983, the ADEA, Title I of the ADA, and New York Human Rights Law § 296 are barred by the Eleventh Amendment.

It is well-established that the Eleventh Amendment bars actions against states and state agencies. Gollomp v. Spitzer, 568 F.3d 355, 365–66 (2d Cir. 2009). Eleventh Amendment immunity precludes a plaintiff from seeking any relief against states and state agencies—including monetary and injunctive relief. Cory v. White, 457 U.S. 85, 90–91, 102 S. Ct. 2325, 2329 (1982). This immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." Gollomp, 568 F.3d at 366 (internal quotation marks omitted). The Eleventh Amendment also bars claims for money damages against state officials acting in their official capacities. Kentucky v. Graham, 473 U.S. 159, 167–68, 105 S. Ct. 3099, 3106 (1985). However, suits against state officials in their official capacities for prospective injunctive relief to stop ongoing violations of federal law are permitted. Ex parte Young, 209 U.S. 123, 159–60, 28 S. Ct. 441, 453–54 (1908).

Eleventh Amendment immunity can only by lost if Congress unequivocally abrogates

the state's immunity or the state expressly consents to suit. Gollomp, 568 F.3d at 365–66. It is well-settled that Congress did not abrogate state immunity through § 1983. Quern v. Jordan, 440 U.S. 332, 343–45, 99 S. Ct. 1139, 1146–47 (1979); Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990). Neither did the ADEA or Title l of the ADA validly abrogate the states' sovereign immunity. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91–92, 120 S. Ct. 631, 650 (2000) (ADEA); Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 374, 121 S. Ct. 955, 967–68 (2001) (Title I of the ADA). Similarly, "[n]othing in the HRL provides any basis for finding that New York State has waived Eleventh Amendment immunity thereunder." Pazamickas v. N.Y. Office of Mental Retardation & Dev. Disabilities, 963 F. Supp. 190, 196 (N.D.N.Y. 1997) (McAvoy, C.J.).

Hamzik argues that the OPWDD effectively waived its Eleventh Amendment immunity by entering into a stipulation in a completely unrelated action in the Southern District of New York in 2002. However, the stipulation, filed in Duryea v. New York State Office of Mental Retardation and Development Disabilities (No. 95 Civ. 8789), never discussed the state's sovereign immunity, § 1983, the ADEA, or the ADA. See Rodriguez Decl., Ex. A, 6–18. Further, although the stipulation arose from a claim brought pursuant to, inter alia, the New York Human Rights Law, there is nothing in the stipulation that constitutes an unequivocal abrogation of immunity or consent to future suit.

Plaintiff also cites Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 124 S. Ct. 899 (2004), in support of his argument that the Eleventh Amendment does not bar these claims. The Hawkins Court held that the Eleventh Amendment did not bar the enforcement of a state's obligations under a valid consent decree that had been entered into in federal court. Id. at 439, 124 S. Ct. at 904. Defendants never entered into a consent decree with Hamzik, and

he does not seek to enforce such a decree.  Hawkins is therefore inapplicable to the current action.  Hamzik cites several other cases in which plaintiffs recovered money damages from state entities for violations of Title VII.  However, these cases have absolutely no bearing on the state's immunity from claims brought under § 1983, the ADEA, the ADA, or New York Human Rights Law.  Further, it is well settled that Congress, through the enactment of Title VII, abrogated immunity with respect to discrimination claims.  See Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S. Ct. 2666, 2671 (1976).

In sum, defendants have not waived their Eleventh Amendment immunity nor have they consented to be sued.  Accordingly, all § 1983, ADEA, ADA, and New York Human Rights Law claims against OPWDD—an arm of the state—will be dismissed.  Further, all § 1983, ADEA, ADA, and New York Human Rights Law claims for monetary damages against the individual defendants in their official capacities will also be dismissed.

### D. Failure to Exhaust Administrative Remedies[9]

Defendants argue that all Title VII, ADEA, and ADA discrimination claims concerning incidents not raised in plaintiff's formal EEOC charge must be dismissed for failure to exhaust administrative remedies.  Plaintiff claims that he adequately exhausted administrative remedies by filing the EEOC charge on April 6, 2010, and sending letters to EEOC investigator Kielt thereafter.

Before commencing an action in federal court alleging violations of Title VII, the

---

[9]  Defendants invoke Rule 12(b)(1) in their argument for dismissal of discrimination claims not included in the EEOC charge.  However, "the failure to exhaust administrative remedies is a precondition to bringing a [suit] in federal court, rather than a jurisdictional requirement."  Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000).  Therefore, this argument is properly raised as a failure to state a claim under Rule 12(b)(6) rather than as a lack of subject matter jurisdiction under Rule 12(b)(1).  See Fichera v. State Univ. of N.Y., No. 5:04-CV-78, 2007 WL 2874450, at *3 (N.D.N.Y. Sept. 27, 2007) (Mordue, C.J.).

ADEA, and the ADA, a plaintiff must first file a timely charge with the EEOC.  42 U.S.C.

§ 12117 (incorporating into the ADA the exhaustion requirement of Title VII, codified at 42

U.S.C. § 2000e-5); Ximines v. George Wingate High Sch., 516 F.3d 156, 158 (2d Cir. 2008)

(ADEA); Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006) (per curiam) (Title

VII).  The purpose of the exhaustion requirement "is to provide an opportunity for the

resolution of discrimination complaints by means of 'conciliation, conference, and

persuasion.'"  Wrenn v. Sec'y, Dep't of Veteran Affairs, 918 F.2d 1073, 1078 (2d Cir. 1990)

(quoting 29 C.F.R. § 626(d)).  It also gives the agency "the opportunity to investigate,

mediate, and take remedial action."  Stewart v. U.S. Immigration & Naturalization Serv., 762

F.2d 193, 198 (2d Cir. 1985).

     Claims not raised in an EEOC charge may nonetheless be asserted in federal court

where the claims:  (1) concern conduct that falls within the scope of the EEOC investigation

that can reasonably be expected to grow out of the charge; (2) allege retaliation for filing the

charge; or (3) concern further incidents of discrimination carried out in precisely the same

manner alleged in the charge.  Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003).  These

narrow exceptions are "based on the recognition that EEOC charges frequently are filled out

by employees without the benefit of counsel and that their primary purpose is to alert the

EEOC to the discrimination that a plaintiff claims [he] is suffering."  Deravin v. Kerik, 335 F.3d

195, 201 (2d Cir. 2003) (internal quotation marks omitted).  When considering whether

claims are reasonably related to those in the EEOC charge, "the focus should be on the

factual allegations made in the charge itself, describing the discriminatory conduct about

which a plaintiff is grieving."  Id. (internal quotation marks and alteration omitted).

     The only claim identified in the EEOC charge alleged sex discrimination related to the

fact that Elbrecht was transferred to a full-time position in the 5A Unit before Hamzik in January 2010.  Plaintiff's subsequent claims are not reasonably related to this claim, they do not concern incidents of sex discrimination carried out in the same manner, and plaintiff does not allege that the defendants retaliated against him for filing the EEOC charge.  The subsequent claims involve different types of alleged discrimination arising from completely separate conduct by different defendants who were not named in the EEOC charge.  The charge did not alert the EEOC to plaintiff's claims of age discrimination related to the appointment of Knebis to his former position, Kelsey's alleged retaliation for plaintiff's grievance against him, the purported preferential treatment afforded to Kristen, the alleged race and age discrimination related to Darden's appointment to the 4E Unit, or defendants' repeated refusal to provide plaintiff with reasonable accommodations for his alleged disability.

Plaintiff's assertion that he satisfied the exhaustion requirement by sending supplemental letters to Kielt is unpersuasive.  Indeed, "[c]ourts have rejected the argument that allegations made to EEOC officers but not included in the actual charge should be deemed 'reasonably related' to the charge."  Fleming v. Verizon N.Y., Inc., 419 F. Supp. 2d 455, 462 (S.D.N.Y. 2005).  Further, because only the charge is forwarded to the employer, "courts will not consider" claims presented in separate documents when determining whether administrative remedies have been exhausted.  Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d 285, 315 (S.D.N.Y. 2003); see also Novitsky v. Am. Consulting Eng'rs, LLC, 196 F.3d 699, 702 (7th Cir. 1999) (plaintiff failed to exhaust administrative remedies where the EEOC charge did not include the claim, even though the claim was described in an EEOC intake questionnaire); cf. Morris v. David Lerner Assocs., 680 F. Supp. 2d 430, 437 (E.D.N.Y.

2010) (allegations in letter physically attached to the EEOC charge were reasonably related to subsequent claims brought in federal court as evidenced by EEOC's explicit reference to these allegations in the right to sue letter).

Hamzik did not attach any additional documents to the EEOC charge or incorporate any additional documents by reference therein.[10]  He sent the first supplemental letter to Kielt over seven weeks after filing the EEOC charge.  His second letter was sent over three months thereafter and acknowledged that the investigation did not address the additional claim identified in the first letter.[11]  Plaintiff's third letter referenced a recent hearing at which the only issues discussed related to the claim involving Elbrecht.  In short, there is nothing to suggest the EEOC ever incorporated any of the additional claims alleged in plaintiff's supplemental letters into the ongoing investigation and negotiations.  There was never an opportunity to resolve these additional claims of discrimination through conciliation, conference, and/or persuasion.  Similarly, OPWDD was not afforded the opportunity to investigate, mediate, and take remedial action with respect to these claims.  Therefore, the purposes of the exhaustion requirement were not served.

In sum, plaintiff failed to exhaust administrative remedies for all ADEA and ADA claims.  The only Title VII claim for which plaintiff exhausted administrative remedies is the

---

[10]  Nor does Hamzik allege that the EEOC intake interviewer mistakenly failed to include all of the claims he intended to assert in the charge.  This renders most of the cases he cites in support of his exhaustion argument inapplicable as these cases involved charges that were insufficient due to mistakes made by the EEOC interviewer.  See Early v. Bankers Life & Cas. Co., 959 F.2d 75, 80 (7th Cir. 1992); Steffen v. Meridian Life Ins. Co., 859 F.2d 534, 543–44 (7th Cir. 1988); Angotti v. Kenyon & Kenyon, 929 F. Supp. 651, 654 (S.D.N.Y. 1996); Sickinger v. Mega Sys., Inc., 951 F. Supp. 153, 158 (N.D. Ind. 1996).

[11]  It is noted that when plaintiff sent his second letter on September 14, 2010, he could have filed a new, and timely, EEOC charge regarding any discriminatory conduct dating back to November 18, 2009.  See 42 U.S.C. § 2000e-5; 42 U.S.C. § 12117(a) (an aggrieved employee must file a charge with the EEOC within 300 days of the alleged discrimination).

alleged discrimination related to Elbrecht's transfer to the 5A Unit.  Accordingly, defendants' motion to dismiss all ADEA, ADA, and Title VII claims—except for the one Title VII claim described in the EEOC charge—will be granted.

### E.  Remaining Title VII Claim

The remaining Title VII claim is brought against OPWDD, Lee, and Robinson concerning the transfer of Elbrecht to the 5A Unit.[12]  Hamzik alleges that allowing Elbrecht, a female, to transfer to a full-time position in the 5A Unit one week before him amounted to sex discrimination.

In order to ultimately prevail on a Title VII sex discrimination claim, a plaintiff must show:  (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).  At the pleading stage, however, a plaintiff's complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 998 (2002) (quoting Fed. R. Civ. P. 8(a)(2)).  Therefore, the complaint must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Id. (internal quotation marks omitted).

Hamzik fails to state a Title VII sex discrimination claim because the complaint is devoid of any allegations from which it can be reasonably inferred that the defendants' action was taken because of his sex.  There is simply nothing in the complaint to suggest that the

---

[12]  It is well established that there is no individual liability under Title VII.  Briggs v. N.Y. Dep't of Transp., 233 F. Supp. 2d 367, 373 (N.D.N.Y. 2002).  Therefore, this claim may only be asserted against OPWDD.

decision to allow Elbrecht to begin a full-time position at the 5A Unit one week before Hamzik was motivated by plaintiff's sex.  Plaintiff does not allege that defendants made remarks to or about him reflecting discriminatory animus.  Similarly, there are no allegations suggesting a history of sex discrimination or that these defendants favored female employees over male employees generally or made any comments evidencing such a prejudice.  Plaintiff's conclusory assertion that defendants discriminated against him by allowing a woman to start her job one week before he started a similar job is insufficient to state a plausible discrimination claim.  See Salaam v. Syracuse Model Neighborhood Facility, No. 5:11-CV-948, 2012 WL 893487, at *5 (N.D.N.Y. Mar. 15, 2012) (D'Agostino, D.J.) (granting defendants' motion to dismiss where "[p]laintiff has only provided conclusory statements that she was terminated because of her race, which is insufficient to give rise to an inference of discrimination based on her membership in a protected class" (internal quotation marks omitted)).

Additionally, plaintiff fails to allege a sufficient adverse employment action.  In order to support a Title VII claim, the alleged action "must cause a materially adverse change in the terms and conditions of employment, and not just mere inconvenience." Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007) (per curiam) (internal quotation marks, alteration, and citation omitted).  "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006) (internal quotation marks omitted).

Hamzik remains employed at BDC, he has not been demoted in terms of title or

salary, and his responsibilities have not been diminished.  Plaintiff offers only speculative

allegations that his delayed transfer to a full-time position in the 5A Unit caused a loss of one

week's seniority.[13]  Even assuming it did, this is not a significant adverse change upon which

to base a Title VII claim.  See Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir.

2000) (four-month delay in employee's reassignment to a position within the school district

did not constitute an adverse employment action); Warren v. N. Shore Univ. Hosp., 268 F.

App'x 95, 98 (2d Cir. 2008) (summary order) (delay in plaintiff's transfer to a position in

another department at the hospital was not an adverse employment action).

Accordingly, defendants' motion to dismiss the remaining Title VII claim will be

granted.

### F.  Equal Protection Claims

Liberally construing the complaint, Hamzik brings equal protection claims related to

four separate incidents:  (1) the transfer of Elbrecht to the 5A Unit approved by Lee and

Robinson; (2) the extension of "light duty" to Kristen granted by Lee, Hall, and Salko; (3)

Kelsey's appointment of Knebis to plaintiff's former position at Glenwood House; and (4)

Salko's appointment of Darden to a full-time position in the 4E Unit.

To adequately allege a violation of the Equal Protection Clause of the Fourteenth

Amendment, "a plaintiff must demonstrate that he was treated differently than others similarly

situated as a result of intentional or purposeful discrimination."  Phillips v. Girdich, 408 F.3d

124, 129 (2d Cir. 2005).  Plaintiff must also show that this disparate treatment "cannot

survive the appropriate level of scrutiny" applicable to the alleged discrimination.  Id.

---

[13]  It is unclear how the date of his transfer to the 5A Unit would impact his seniority level.  Plaintiff's
employment at BDC began on June 8, 2006, and there is nothing to suggest that any date other than this
original starting date determines seniority status.

Conclusory allegations of disparate treatment or plaintiff's personal opinion that such treatment was motivated by discriminatory intent is not enough to prevail on an equal protection claim.  Nash v. McGinnis, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008).

### 1. Elbrecht's Transfer

Assuming Hamzik has adequately alleged that defendants Lee and Robinson treated him differently than others similarly situated by allowing Elbrecht, a female, to begin a full-time position in the 5A Unit one week before him, his equal protection claim related to this event still fails.  As detailed above, there is nothing in the complaint from which to draw a reasonable inference that Elbrecht's transfer was based on her, or plaintiff's, sex.  His conclusory allegation and personal opinion that Lee and Robinson's approval of Elbrecht's transfer was motivated by discriminatory intent is insufficient to state a claim.  See id.

### 2. Kristen's Light Duty

Plaintiff's assertion that he is similarly situated to Kristen, a young woman suffering from complications in her pregnancy, is unpersuasive.  To be "similarly situated," the individual with whom Hamzik attempts to compare himself "must be similarly situated in all material respects."  Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997).  Plaintiff, a fifty-three-year-old man with a "temporary back injury," offers nothing but a conclusory allegation that he and Kristen are similarly situated because "they are both considered temporarily disabled."  Proposed Second Am. Compl., ¶¶ 105–06.  Further, plaintiff does not allege any facts to suggest that he was denied, and Kristen was granted, an extension of light duty because he is an older man and she is a young woman.

In short, Hamzik fails to state a plausible equal protection claim, based on his age, sex, or disability, related to Lee, Hall, and Salko's decision to extend Kristen's light duty

assignment by three months.

### 3. Knebis's Appointment

Plaintiff alleges that defendant Kelsey "illegally gifted" his former position at Glenwood House to Knebis, a man in his twenties.  Proposed Second Am. Compl., ¶ 173.  Plaintiff concludes that this was a violation of his equal protection rights.

Initially, it is unclear how Kelsey could have discriminated against plaintiff based on the factual allegations in the complaint.  Plaintiff had voluntarily left his position at Glenwood House to take a full-time position in the 5A Unit.  After suffering a work-related injury in the 5A Unit, plaintiff sought to return to his position at Glenwood House.  However, Kelsey had already given this position to Knebis.  Plaintiff does not allege that he was forced out of his position at Glenwood House to make room for Knebis.  Nor can Kelsey be accused of discrimination simply because he filled a vacant position.  Plaintiff was not competing with Knebis for a position at Glenwood House at the time of Knebis's appointment.

Even if Kelsey did violate the procedures outlined in the collective bargaining agreement by appointing Knebis to plaintiff's former position without first posting the vacancy, there is absolutely nothing in the complaint to suggest that he did so in an effort to discriminate against plaintiff because of his age.  There are no allegations that Kelsey made derogatory remarks about plaintiff's age or took age into consideration when he decided to give Knebis plaintiff's former position.  Again, plaintiff's personal opinion that this conduct was motivated by discriminatory intent is insufficient to state a plausible equal protection claim.

### 4. Darden's Appointment

Plaintiff alleges that defendants Salko and Fadden discriminated against him based

on his age and race by:  (1) allowing Darden, a younger African–American man, to bid on an open position at Glenwood House while prohibiting plaintiff from bidding on such a position; and (2) appointing Darden to a full-time position in the 4E Unit without requiring him to bid on the position as required by the collective bargaining agreement.

Plaintiff has arguably established that he and Darden were similarly situated because they were both "locked into" similar six-month employment commitments when positions opened up at Glenwood House.  Proposed Second Am. Compl., ¶ 20.  However, there is nothing to suggest Fadden acted with discriminatory animus towards plaintiff's race or age when he permitted Darden, but not plaintiff, to bid on an open position.  Similarly, plaintiff offers only his conclusory allegation that Salko's decision to appoint Darden to a position in the 4E Unit was motivated by age or racial bias.

In sum, plaintiff's equal protection claims fail because there are no factual allegations in the liberally construed complaint from which to infer that any of the above described conduct was taken as a result of purposeful discrimination.  Accordingly, defendants' motion to dismiss the equal protection claims will be granted.

## G. Due Process Claim

Hamzik alleges that defendant Kelsey "violated his 5th Amendment right to due process by attempting to interfere with his grievance" when he made two "harassing and intimidating" phone calls four days after plaintiff filed a grievance against him.  Proposed Second Am. Compl., ¶ 227.  Plaintiff does not complain about the sufficiency of the employment grievance procedure.  Nor does he allege that Kelsey's behavior impacted the procedure or prevented him from the benefit of the grievance process.  Moreover, an employment grievance process is not a fundamental liberty interest protected by the due

process clause.  <u>See</u> <u>Smith v. Hogan</u>, No. 3:10-CV-1025, 2011 WL 4433879, at *8 (D. Conn. Sept. 22, 2011) ("Complying with health codes, informal employment grievance hearings, and at-will employment are not fundamental and deeply rooted liberties comparable to the right to marry, the right to have and raise children, or the right to bodily integrity.").

These factual allegations are better suited for a retaliation claim.  Accordingly, defendants' motion to dismiss the due process claim will be granted.

### H.  <u>Retaliation Claim</u>

Hamzik claims that Kelsey's two harassing phone calls on February 16, 2010, were made in retaliation for the grievance he filed against Kelsey four days prior.  Hamzik further alleges that Kelsey threatened to "write up the Plaintiff" unless he withdrew the grievance. Proposed Second Am. Compl., ¶ 138.

In order to state a retaliation claim in the public employment context, a plaintiff must allege that:  (1) he engaged in speech as a citizen on a matter of public concern; (2) he suffered an adverse employment action; and (3) his speech was a motivating factor in the adverse employment decision.  <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 188 (2d. Cir. 2008).  "An employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking 'upon matters only of personal interest.'"  <u>Sousa v. Roque</u>, 578 F.3d 164, 174 (2d Cir. 2009) (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 147, 103 S. Ct. 1684, 1690 (1983)), <u>cert. denied</u>, 132 S. Ct. 104 (2011).

The content of, and motivation for, Hamzik's internal grievance against Kelsey related to his personal complaint regarding the appointment of Knebis to his former position at Glenwood House.  He was not speaking as a private citizen about a matter of public concern, but rather as an aggrieved public employee about a personal employment issue.  The

complaint thus fails to establish the first prong of a retaliation claim.

Even if Hamzik was attempting to speak out on a matter of public concern regarding Kelsey's alleged pattern of appointing public employees without first posting vacant positions as required by the collective bargaining agreement, the retaliation claim must fail for lack of any adverse employment action taken against plaintiff.  As noted above, Hamzik remains employed at the BDC and was never demoted in title, salary, or assignment based on his grievance against Kelsey.  Moreover, plaintiff effectively utilized other avenues of relief to address this matter.  It is undisputed that immediately after receiving the phone calls from Kelsey plaintiff notified defendant Lee, a union representative, and the grievance committee chairman.  He never heard from Kelsey again, and no disciplinary action was taken against him.

Accordingly, defendants' motion to dismiss the retaliation claim will be granted.

### I. Remaining State Law Claims

As all of the federal claims will be dismissed, the only claims that remain are the state law claims.  Pursuant to 28 U.S.C. § 1367(c)(3), supplemental jurisdiction over any remaining state claims is declined.

## IV. CONCLUSION

As the defendants did not waive their Eleventh Amendment immunity, all § 1983, ADEA, ADA, and New York Human Rights Law claims against OPWDD will be dismissed. Similarly, all ADEA and ADA claims will be dismissed as Hamzik failed to exhaust available administrative remedies.  The only Title VII claim for which plaintiff exhausted administrative remedies is the alleged discrimination related to Elbrecht's transfer to the 5A Unit.  Therefore, all other Title VII claims will be dismissed.

The proposed second amended complaint fails to state a plausible Title VII claim concerning Elbrecht's transfer to a full-time position in the 5A Unit in January 2010. Specifically, there are no allegations from which it can reasonably be inferred that the circumstances surrounding the transfer give rise to an inference of discrimination or that Hamzik suffered an adverse employment action.  Plaintiff's equal protection claims also fail because there are no factual allegations from which to infer that any of the defendants' allegedly violative conduct was taken as a result of purposeful discrimination.  Plaintiff's due process claim must be dismissed as well because an employment grievance process is not a fundamental liberty interest.  Finally, the proposed second amended complaint fails to allege a plausible retaliation claim because plaintiff was not engaged in speech related to a matter of public concern and did not suffer an adverse employment action.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss (Dkt. No. 24) is GRANTED;

2.  Plaintiff's cross-motion for leave to file a second amended complaint (Dkt. No. 40) is DENIED as futile;

3.  All of plaintiff's federal causes of action are DISMISSED with prejudice; and

4.  The remaining state law causes of action are DISMISSED without prejudice.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly.

_____
United States District Judge

Dated:  May 15, 2012
         Utica, New York.